**ORIGINAL**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TELEPHONE INFORMATION NEEDED FOR A CRIMINAL INVESTIGATION | No. CR 11 90 633 MISC<br>[PROPOSED] ORDER |

FILED 2011 JUL 27 MEJ

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TELEPHONE INFORMATION NEEDED FOR A CRIMINAL INVESTIGATION | No.<br><br>[PROPOSED]  ORDER |

Before this Court is an Application under 18 U.S.C. §§ 2703(c), 2703(d), 3122, and 3123, by Randy S. Luskey, an attorney for the Government as defined by Fed. R. Crim. P. 1(b)(1)(B), requesting an Order authorizing the installation and use of a pen register and trap and trace device on the instrument or facility currently utilizing the following subject telephone number, (hereinafter, the "Target Device"):

    Telephone number:    916-889-0310
    Service provider:    Metro PCS
    Subscriber:    Fernando Rangel
    Address:    3220 Norstrom Way, Sacramento, CA 95833

Upon review of the Application, the Court hereby FINDS that:

Pursuant to 18 U.S.C. § 3123, Applicant has certified that the information likely to be obtained by such use is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (hereinafter the "Investigative Agency") in connection with possible violations of federal criminal statutes, including Title 18 U.S.C. Section 1961 (RICO activity) and Title 21, U.S.C. Sections 841(a)(1) and 846 (narcotics trafficking) by Henry CERVANTES, Daniel PEREZ, Fernando RANGEL, Andrew CERVANTES, Alberto LAREZ

and others known and unknown, believed to be members and associates of the Nuestra Familia prison gang.

Pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), Applicant has offered specific and articulable facts showing that there are reasonable grounds to believe that records or other information identifying subscribers or customers (not including the contents of communications) for telephone numbers identified through the pen register and trap and trace devices on the Target Device, changes in service regarding the Target Device, cell site information[1] regarding the Target Device, and records or other information pertaining to subscriber(s) or customer(s) (but not including the contents of communications) for the Target Device are relevant and material to an ongoing criminal investigation of the specified offenses.

THEREFORE, IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 3123, that agents of the Investigative Agency may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted[2] from the Target Device, to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" or connected for incoming or outgoing calls and attempts, for a period of sixty (60) days from the date this Order is filed by the Court,[3]

---

[1] A cell phone must send a radio signal to an antenna tower which, in turn, is connected to the provider's network. The area covered by the tower varies depending, inter alia, on the population density of the area. This area is often divided into thirds, or 120 degree sectors. "Cell site information" as used in this Order refers to the antenna tower and sector to which the cell phone sends its signal. This includes the physical location and/or address of the cellular tower and identification of the particular sector of the tower receiving the signal. This information does not provide the specific or precise geographical coordinates of the Target Device.

[2] This includes dialing, routing, addressing, or signaling information transmitted over the communication service provider's network by a two-way radio feature (including, but not limited to, Nextel's "Direct Connect/Direct Dispatch," Verizon Wireless' "Push to Talk," or Sprint's "ReadyLink" [including alert, group calls, and private calls associated with the assigned IMSI and UFMI.])

[3] As used herein, "the date this Order is filed by the Court" is the date indicated by the clerk's file stamp on the first page of the Order.

provided, however, that such information shall not include the contents of any communication;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123, that agents of the Investigative Agency may install, or cause to be installed, and use a trap and trace device on the Target Device to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information[4] reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of sixty (60) days from the date this Order is filed by the Court, provided, however, that such information shall not include the contents of any communication;

IT IS FURTHER ORDERED that the Investigative Agency is not authorized to obtain from the telephone Service Providers: (1) any cell site information that might be available when the Target Device is turned "on" but a call is not in progress; (2) information that would allow it to triangulate[5] multiple antenna tower locations and thereby attempt to determine the precise location of the user of the Target Device, even if such location could be determined by said technique; or (3) Global Positioning System (GPS)[6] information regarding the location of the Target Device, even if that technology is built into the Target Device.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 2703(c)(1)(B), 2703(c)(2),

---

[4]   This includes the same information described in footnote 2 above.

[5]   "Triangulation" refers to a technique involving the use of information received from the Telephone Service Providers regarding the strength, angle, and timing of the Target Device's signal measured at two or more cell site locations to attempt to determine the precise location of the user of the Target Device.

[6]   A GPS device receives radio signals from satellites and uses those signals to calculate the geographic position of the instrument or facility which carries it which position can be transmitted to the Telephone Service Providers via the cellular telephone network. When a GPS device receives signals from at least four NAVSTAR (Naval Signal Timing and Ranging) satellites, it can mathematically calculate the device's latitude, longitude, and altitude with a high level of precision.

ORDER                          3

2703(d), 3122, and 3123 that Adelphia Communications, Adelphia Long Distance, Allegiance Telecom of California, Inc., Astound, AT&T California, AT&T Local Service, AT&T Long Distance, AT&T Midwest, AT&T Nevada, AT&T Southwest, Bell South Telecommunications, Broadwing Communications, Cellco Partnership doing business as Verizon Wireless, Cellular One, Central Wireless Partnership doing business as Sprint PCS, Cingular Wireless, Comcast, Cox Communications, Dobson Cellular, Dobson Communications, Edge Wireless LLC, Electric Lightwave Inc., Embarq, Ernest Communications, Evans Telephone Company, Frontier: A Citizens Communications Company, Genesis Communications International, ICG Communications, ICG Telecom Group, Locus Communications, Metrocall, Metro PCS, Mpower, Nationwide Paging, Navigator Telecommunications LLC, Network Services LLC, Nextel Communications, NII Communications, Pac West Telecomm Incorporated, Qwest Communications, RCN Communications, Roseville Telephone Company, Skype, Sprint-Nextel, TelePacific Communications, Teligent, Time-Warner Telecom, T-Mobile USA Inc., TracFone Wireless, USA Mobility, US Cellular, US TelePacific Corp. doing business as TelePacific Communications, Verizon California, Verizon District of Columbia, Verizon Maryland, Verizon New Jersey, Verizon New York, Verizon Northwest, Verizon Texas, Virgin Mobile, Vonage, Weblink Wireless, West Coast PCS LLC doing business as Sure West Wireless, Western Wireless Corporation, XO Communications, and any and all other telephone service providers (including any Internet service provider or other electronic communications provider providing voice-over IP telephony [VoIP]) (collectively, "the Telephone Service Providers"), and any and all other persons or entities providing wire or electronic communications service in the United States whose assistance may facilitate the execution of this Order, shall disclose or provide, upon oral or written demand by agents of the Investigative Agency:

    1.    For the Target Device, records or other information pertaining to subscriber(s) or customer(s), including cellsite information and toll or call detail records (including in two-way radio feature mode) for the sixty (60) days prior to the date this Order is filed by the Court (but not including the contents of communications);

2.     For the Target Device, after receipt and storage,[7] records or other information pertaining to subscriber(s) or customer(s), including (1) the means and source of payment for the service and (2) cellsite information, provided to the United States for (a) the origination of a call from the Target Device or the answer of a call to the Target Device and (b) the termination of the call (but not including the contents of the communications);

3.     Pursuant to 18 U.S.C. § 2703(c), after receipt and storage, the following subscriber records and other information for all published, non-published, or unlisted dialing, routing, addressing, or signaling information captured by the pen register and trap and trace device on the Target Device:

    (i)    name;
    (ii)   address;
    (iii)  local and long distance telephone connection records, or records of session times and durations with Target Device;
    (iv)  length of service (including start date) and types of service utilized; and
    (v)   telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

4.     Any and all changes (including additions, deletions, and transfers) in service regarding the Target Device, including telephone numbers; other unique identifiers such as Electronic Serial Numbers (ESNs), Subscriber Identity Modules (SIMs), International Mobile Subscriber Identifiers (IMSIs), International Mobile station Equipment Identities (IMEIs), and/or Urban Fleet Mobile Identifiers (UFMIs); and subscriber information (published, non-published, listed, or unlisted) associated with these service changes.

IT IS FURTHER ORDERED that this authorization for the installation and use of a pen register and trap and trace device applies not only to the Target Device, but also to any changed telephone numbers subsequently assigned to an instrument bearing the same ESN, SIM, IMSI, IMEI, and/or UFMI as the Target Device, or any changed ESN, SIM, IMSI, IMEI, and/or UFMI subsequently assigned to the same telephone number as the Target Device, and any additional changed telephone number, ESN, SIM, IMSI, IMEI, and/or UFMI, whether the changes occur consecutively or simultaneously, listed to the same subscriber or account number as the Target

---

[7] "After receipt and storage" is intended to ensure that the information authorized under paragraphs 2 and 3 is information that is first captured and recorded by the provider before being sent to the Investigative Agency.

ORDER                           5

1  Device within the 60-day period authorized by this Order and further, that, pursuant to 18 U.S.C.
2  § 3123(b)(1)(C), the tracing operations authorized by this Order be without geographical limits.
3        IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(a)(1) and § 3123 (b)(2),
4  that, upon service of this Order, the Target Device's Telephone Service Providers shall furnish
5  agents of the Investigative Agency with all information, facilities, and technical assistance
6  necessary to accomplish the installation and use of the pen register and trap and trace devices,
7  unobtrusively and with minimum interference with the services that are accorded the persons
8  with respect to whom the installation and use is to take place.
9        IT IS FURTHER ORDERED that the Target Device's Telephone Service Providers shall
10 furnish the results of the pen register and trap and trace devices to agents of the Investigative
11 Agency as soon as practicable, twenty four (24) hours a day for the duration of the Order.
12       IT IS FURTHER ORDERED that the Target Device's Telephone Service Providers be
13 reasonably compensated by the Investigative Agency for reasonable expenses directly incurred in
14 providing information, facilities, and assistance.
15       Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§
16 2705(b) and 3123(d), that this Order and the Application be SEALED until otherwise ordered by
17 the Court, that the identity of any targets of the investigation and the possible violations thereof
18 may be redacted from any copy of the Order served on any service provider or other person, and
19 that the Target Device's Telephone Service Providers and any other Telephone Service Provider
20 which provides service to a telephone number that either places telephone calls to, or receives
21 telephone calls from, the Target Device, shall not disclose in any manner, directly or indirectly,
22 by any action or inaction, the existence of this Order, in full or redacted form, of the pen register
23 or trap and trace devices, or of this investigation, to the listed subscribers for the Target Device,
24 or to any other person unless otherwise ordered by this Court.

25  7-26-11
26  DATE                                     HON. MARIA-ELENA JAMES
27                                             UNITED STATES MAGISTRATE JUDGE
28